**In re James F. EGAN and Sylvia M. Egan, Debtors.**

**Bankruptcy No. 82–B–00763.**

United States Bankruptcy Court, N.D. Illinois, W.D.

Oct. 5, 1983.

Paul A. Osborn, Sterling, Ill., for petitioner.

Kenneth F. Ritz, Rockford, Ill., for respondent.

## MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This case comes before the Court on the Motion to Convert or Dismiss filed by Dillon Oil Co., a secured creditor, as well as on the submission by the Debtors of the final version of their Disclosure Statement for Court approval. The Debtors, James F. and Sylvia M. Egan, filed a voluntary bankruptcy petition under Chapter 11 of the Bankruptcy Code on August 31, 1982. Over one year has elapsed since that date and at this time there has been no court approval of the Debtors' Disclosure Statement, and this Court has heard impassioned claims by various creditors regarding the Debtors' lack of cooperation, delaying tactics, and evasiveness at every stage of these proceedings.

In their petition, the Debtors state that they are engaged in the "bowling alley" business, identifying this business as the "Clipper Bowl" of Amboy, Illinois. The Debtors also state that the only other businesses in which they have been engaged in the six years immediately prior to filing their Chapter 11 petition are the Anchor Inn, a tavern in Amboy, and the CITCO Service Station, also in Amboy.

Incongruously, the Disclosure Statement filed by the Debtors on May 16, 1983, makes no reference whatsoever to the "bowling alley" business. Instead, under the Section entitled "Background and History of Debtor," the Debtors state that:

"James F. Egan, one of the Debtors, is involved in a number of real estate investments. His financial problems have developed because of the recessionary economy." [1]

The failure of the Debtors to discuss or describe to any extent their involvement in their stated business (the bowling alley), coupled with the fact that Mr. Egan's real estate investments (which the Disclosure Statement seems to indicate are the true source of the financial problems of the Debtors) are listed as totalling over 1.1 million dollars, raise two primary questions.

First, what business are these Debtors actually engaged in? In light of the extent of these real estate investments, and the

---

1. Debtor's Disclosure Statement, Page 2.

dearth of information regarding the bowling alley business, real estate investment appears to be the primary business of the Debtors.

Second, have the Debtors acted in good faith in these proceedings? Some doubt certainly exists in this regard.

Also, it is apparent that the vast majority of the Debtors' real estate "investments" are described as "rental property" in their petition, yet nowhere can the Court find a detailed description of how these rental activities are conducted.

Furthermore, in the 11 months immediately following the filing of the Debtors' petition, on only five occasions were biweekly cash reconciliation reports filed with the Court by the Debtors. Similarly, only four monthly income and expense reports were filed during this period. Although these reports covered the entire period between September 1, 1982, and July 1, 1983, the time lapses between the filing of these reports diminish their usefulness.

In addition, none of the documents presented to this Court indicate what part, if any, Sylvia M. Egan plays or has played in the business of the Debtors. The creditors have found it difficult to explore this void inasmuch as Mrs. Egan was absent from each of the three Section 341 meetings held in this case to date.

On August 28, 1983, a hearing was held on the Disclosure Statement filed by the Debtors. Once again the Debtors were met by a chorus of angry creditors who in unison claimed the information provided by the Debtors was so skeletal in nature that those creditors still knew little more about the Debtors than they knew one year earlier when the petition was filed. These creditors were joined in their objections by the U.S. Trustee.

The aforesaid hearing resulted in this Court denying approval of the Disclosure Statement, citing a lack of adequate information in accordance with 11 U.S.C. Section 1125. Parties in interest were permitted to submit questions to the Debtors seeking information to be included in any amended disclosure statement to be filed by the Debtors. The Order further required the Debtors to file, on or before August 19, 1983, an Amended Disclosure Statement reflecting, to the extent necessary to provide "adequate information," the information requested by those parties in interest submitting written questions. A hearing on the Amended Disclosure Statement was set for September 2, 1983.

At the September 2nd hearing, amidst some controversy, this Court granted the Debtors additional time. The Debtors were ordered to file any amendments to their Disclosure Statement no later than September 14th, with the option of leaving their original Disclosure Statement unaltered and subjecting it to final consideration by the Court.

At the subsequent hearing, the Debtors reiterated their belief that their original Disclosure Statement contained adequate information to satisfy Section 1125. The Debtors stated their election to stand behind their original Disclosure Statement, win, lose, or draw.

## THE DEBTORS' DISCLOSURE STATEMENT UNDER SECTION 1125 ANALYSIS

Solicitation of acceptances or rejections of a reorganization plan is prohibited unless there has been submitted to the party being solicited a summary of the plan and an approved written Disclosure Statement. This requirement appears in Section 1125 of the Bankruptcy Code, entitled "Postpetition Disclosure and Solicitation."

Section 1125 also contains the standard to be applied in determining the adequacy of disclosure in a case under Chapter 11. Quite simply, the Disclosure Statement must be found to contain "adequate information." The fate of the Disclosure Statement submitted by the Debtors in this case thus turns upon whether this Court finds that such adequate information is contained therein.

No simple method exists for determining whether a Disclosure Statement contains

adequate information. As the Legislative History to Section 1125(a) states:

> "Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest."

Although it is clear that the concept of "adequate information" is somewhat elusive, the Bankruptcy Code provides some framework within which to make this determination. This is found in Section 1125(a)(1), which defines "adequate information" as:

> "information of a kind, and in sufficient detail, as far as is reasonably practicable, in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan;"

With this backdrop of statutory requirements and legislative history in mind, the difficulties inherent in drawing a line between an adequate and inadequate disclosure of information become more pointed.

As one author warns:

> "[R]eorganization is not to be doomed by meaningless disclosure paperwork."[2]

Another author points out that:

> "... in a case involving a small, closely held corporation or partnership, a rela-

tively unsophisticated, simple statement will suffice."[3]

While cognizant of these concerns and the fact that they are predicated upon such goals as reducing the expense of Disclosure Statement preparation and expediting solicitation and confirmation of reorganization plans, this Court recognizes the propriety, under certain circumstances, of requiring even individual Chapter 11 Debtors to provide more than just skeletal information.

In view of Congress' stated intention of allowing the Bankruptcy Courts to refine the definition of "adequate information," it is important to consider the pattern which has thus far developed in the case law regarding the value to be given to assertions of opinion in Disclosure Statements. As one author recently concluded:

> "the cases have been explicit in holding that statements of opinion or belief without factual support do not belong in a disclosure statement. Additionally, it is implicit in the cases that the opinion itself is inappropriate, regardless of whether the debtor sets forth a factual basis. This interpretation is consistent with the goals of Section 1125, in that the purpose of disclosure is to present the parties voting on the plan with sufficient factual information to independently evaluate the merits of the proponent's plan. It is clear that one cannot arrive at an informed decision based upon a proponent's self-serving opinion. This line of cases also acknowledges that the disclosure statement is not the place for a bottom-line opinion. It is inappropriate to lobby, even if supporting facts are present."[4]

This Court agrees that without factual support, statements of opinion or belief are entirely inappropriate in Disclosure Statements. The Disclosure Statement is intended to be a source of factual information upon which one can make an informed

---

2. Disclosure of "Adequate Information" Under Chapter 11 of the Bankruptcy Code, 1983 Ann. Surv.Bankr.L. 319.

3. Trost, Business Reorganization Under Chapter 11 of the New Bankruptcy Code, 34 Bus.Law 1309, 1339 (1979).

4. Disclosure of "Adequate Information" Under Chapter 11 of the Bankruptcy Code, 1983 Ann. Surv.Bankr.L. 323.

judgment about a reorganization plan. It is not intended to be an advertisement or a sales brochure.

Nonetheless, this Court does not agree that a debtor's opinion or belief regarding the future would be inappropriate in a Disclosure Statement where it is in the form of a logical conclusion derived from clearly stated facts. In such a case, it may be useful to a typical investor in reaching an informed judgment about the feasibility of the plan to consider the opinion of the Debtor as to the relevance of certain stated facts.

■ In support of this, one need only look to the Legislative History of Section 1125(a), which states:

"A plan is necessarily predicated on knowledge of the assets and liabilities being dealt with and on *factually supported expectations* as to the future course of the business sufficient to meet the feasibility standard in Section 1130(a)(11) of this title. It may thus be necessary to provide estimates or judgments for that purpose. Yet it remains practicable to describe, in such detail as may be relevant and needed, the basis for the plan and the data on which supporters of the plan rely." [5] [Emphasis added]

In this case, this Court finds the Debtors' plans for rehabilitation to be founded upon only the naked assertion in the Debtors' Disclosure Statement that:

"With the anticipated strengthening of the national and local economy, it is anticipated that tenants or buyers for the properties will be found and this will solve the present cash flow problems of the Debtor." [6]

Just this statement, without any supporting facts, is offered by the Debtors.

Regardless of the "nature and history of the debtor" in this case, particularly the fact that the Debtors are individuals and not a large corporation with many shareholders, this Court finds that even an extraordinarily knowledgeable investor could not be expected to glean from the Debtors' assertions facts sufficient to support an informed judgment about the plan. Furthermore, the Debtors' bare assertion of opinion, without supporting facts, is entirely inappropriate in the Disclosure Statement.

The Debtors in this case have also argued that the information contained in their Disclosure Statement should be deemed adequate in light of both the sophistication of the creditors involved and the extensive knowledge about the Debtors which these creditors obtained prior to extending credit. This Court disagrees, and adopts the view expressed in *In Re Adana Mortgage Bankers, Inc.*,[7] that:

"While a disclosure statement to a sophisticated and informed large creditor such as˙mortgage lender lien creditors on real estate [First National Bank of Atlanta] or these 'line' banks for the debtor's mortgage lending operations [Chase Manhattan Bank, N.A.] are not required to be as complete perhaps as required to a 'hypothetical reasonable investor,' these sophisticated creditors are entitled to a disclosure statement prepared by the debtor to which the debtor is accountable. Creditors are not mind-readers or clairvoyant."

This Court has carefully balanced the interests of both the Debtors and Creditors in this case, with due consideration being given to the stated policy considerations set forth by the Congress in drafting Section 1125. Despite the inherent difficulty involved in demarcating the dividing line of adequacy, it is clear that these Debtors have fallen woefully short of supplying adequate information in their Disclosure Statement.

## SHOULD THE CASE BE CONVERTED OR DISMISSED UNDER SECTION 1112(b)?

As Bankruptcy Judge Lavien has so perceptively stated:

---

**5.** Senate Report No. 95–989, 95th Cong., 2d Sess. (1978) 120, U.S.Code Cong. & Admin. News 1978, pp. 5787, 5907.

**6.** Debtors' Disclosure Statement, Page 2.

**7.** 14 B.R. 29 (Bkrtcy.N.D.Ga.1981).

"Bankruptcy is perceived as a haven for wistfulness and the optimist's valhalla where the atmosphere is conducive to fantasy and miraculous dreams of the phoenix rising from the ruins. Unfortunately, this Court is not held during the full moon, and while the rays of sunshine sometimes bring the warming rays of the sun, they more often also bring the bright light that makes transparent and evaporates the elaborate financial fantasies constructed of nothing more than the gossamer wings...." [8]

The observations of Judge Lavien are certainly appropriate in this case. As noted, the Debtors' hopes of rehabilitation in this case are hinged entirely upon the plight of the local economy. The Debtors cite no other facts upon which they base their expectations of rehabilitation. The Court appreciates the apparent optimism of the Debtors in this regard, but finds that this, without more, falls well short of establishing a reasonable likelihood of rehabilitation as described in Section 1112(b)(1) of the Bankruptcy Code. The weight to be given to economic forecasts in a situation such as this can only be light in view of the track record of even trained economists in predicting economic trends.

This case has been pending for more than one year, and the Debtors have been given an opportunity to demonstrate their ability to rehabilitate under Chapter 11. During the early stages of this Chapter 11 proceeding, this Court recognized the difficulties inherent in accepting creditor claims of delay, lack of cooperation, and inability to rehabilitate. But sufficient time has now elapsed to shed the "bright light" Judge Lavien refers to upon this case.

As Debtors-In-Possession, these Debtors have breached their fiduciary duty toward the creditors via their delays, evasiveness, and general lack of cooperation. There is a continuing diminution of the estate and the absence of a reasonable likelihood of rehabilitation. Bankruptcy Code Section 1112(b)(1). The Court further holds that the Debtors have unreasonably delayed so as to prejudice the rights of their creditors. Bankruptcy Code Section 1112(b)(3).

In addition to the existence of these manifestations of "cause," each of which is sufficient to justify dismissal of this Chapter 11 petition under Section 1112(b), other cause exists in this case. The Legislative History of Section 1112(b)(1) makes clear that "wide discretion" is given to the Bankruptcy Court "to make an appropriate disposition of the case when a party in interest requests." It states that "cause" is not limited to the nine examples given in the statute, but:

"The Court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases." [9]

In this particular case, an examination of the actions of the Debtors on the whole, including their failure to gain approval of a Disclosure Statement, exhibits a clear manifestation of "cause" as contemplated by Section 1112(b).

For the reasons stated supra, the Chapter 11 petition of the Debtors should be dismissed.

Finally, it should be noted that Dillon Oil Co.'s Motion to Convert or Dismiss contains no request that the Debtors' Chapter 11 petition be dismissed with prejudice. Therefore, the dismissal in this case shall be without prejudice, pursuant to Section 349(a) of the Bankruptcy Code. Since no Discharge Order has ever been entered in this case, the Debtors are not barred from receiving a discharge in a later case of debts that were dischargeable in this case. Moreover, creditors who move successfully for dismissal of a Chapter 11 case must be aware that such a dismissal will provide an opportunity for the debtor to refile a second Chapter 11 case and obtain a new Section 1121(b) exclusive filing period.

**8.** *In Re Maxim Industries,* 22 B.R. 611 (Bkrtcy. D.Mass.1982).

**9.** House Report No. 95–595, 95th Cong., 1st Sess. (1977) 405, U.S.Code Cong. & Admin. News 1978, pp. 5787, 6362.

An Order was entered herein on September 23, 1983.