**In re C. Kenneth FROST and Marianna Frost d/b/a Dixie Frost Farms, Debtors.**

**Bankruptcy No. 183–00219.**

United States Bankruptcy Court,
M.D. Tennessee.

Jan. 6, 1984.

Joe W. Henry, Jr., Thomas J. Stack, Pulaski, Tenn., for Union Bank.

Stella Hargrove, Columbia, Tenn., for Production Credit Ass'n.

E. Franklin Childress, Nashville, Tenn., for Small Business Admin. and Commodity Credit Corp.

Stephen M. Miller, Nashville, Tenn., for Debtors.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the motions of the Union Bank of Pulaski, Tennessee (hereinafter "Union Bank"), the United States of America on behalf of the Small Business Administration and Commodity Credit Corporation (hereinafter "SBA" and "CCC" respectively) and Columbia Production Credit Association (hereinafter "PCA") to dismiss the debtors C. Kenneth and Marianna Frost's Chapter 11 bankruptcy case pursuant to 11 U.S.C.A. § 1112(b) (West 1979).[1] On consideration of the evidence presented at the hearing, stipulations, exhibits, briefs of the parties and the entire record, this court concludes that the debtors' Chapter 11 case should be DISMISSED.

The following shall represent findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

The aforementioned motions to dismiss culminated in a two-day hearing before this court during which extensive testimony was presented. The facts elicited are briefly as follows.

---

1. Because the debtors are farmers, this case cannot be involuntarily converted to a Chapter 7 liquidation. 11 U.S.C.A. § 1112(c) (West 1979). *See also In re Blanton Smith Corp.,* 7 B.R. 410, 412–414 (Bkrtcy.M.D.Tenn.1980).

The debtors are engaged primarily in the dairy farming business. Mr. Frost previously served four three-year terms on the Board of Directors of Dairyman, Inc., a nationwide association of dairy farmers, and is currently one of 37 members on the Southeastern Regional Board for Dairyman, Inc. Mrs. Frost maintained the books and generally assisted her husband in the operation of the dairy farm.

The Frosts, doing business as Dixie Frost Farms, filed a voluntary Chapter 11 petition in this court on January 24, 1983. At the time this petition was filed, the debtors' secured debt totalled $1,099,082 and their unsecured debt was $17,923. By far the largest creditor of the debtors was the Union Bank which at the date of the filing of the petition held a $831,538.63 secured claim against the debtors. Jimmy Mooney, an executive vice president of Union Bank, testified that the Frost indebtedness was the bank's largest single loan and constituted 13.69% of the bank's capital. He further stated that the debtors' outstanding debt had constantly escalated since 1976, when they owed Union Bank approximately $128,000. The debtors' schedules also reflected secured claims of $15,713 to CCC, $11,921 to PCA and $55,570 to SBA. The parties do not dispute that the debtors are in material default on all of these debts.

Mrs. Frost testified that the debtors' dairy business had suffered financially since their dairy herd had been placed under quarantine in January of 1979. This quarantine was lifted on January 12, 1983. At the present time, the debtors are operating and milking approximately 232 cows.

As of this date, almost a year after this Chapter 11 petition was commenced, the debtors have not submitted a plan of reorganization as required under the provisions of Chapter 11. The debtors nevertheless both testified at the hearing about the proposed provisions of their as yet unformulated plan. Mrs. Frost projected that the debtors could obtain in 1983 a cash flow of $50,000 per month from their milking operation. She nevertheless admitted that they haven't achieved this amount as of August of 1983 and that they had been unable to make any payments on their long-term debt from the funds received in 1983. The debtors' monthly income for 1983 was as follows:

| January | $37,615 |
| February | $37,230 |
| March | $39,580 |
| April | $48,846 |
| May | $45,874 |
| June | $45,200 |
| July | $41,734 |
| August | $38,255 |

Mrs. Frost further predicted that the debtors could increase their cash flow in 1984 to an average of $58,500 per month by milking a 300 cow herd. Mrs. Frost's calculations would entail producing approximately 15,000 to 18,000 pounds of milk daily for an average of roughly 60 pounds per cow per day. Mrs. Frost did, however, acknowledge that the debtors' herd had only produced 42.1 pounds per cow per day from August of 1982 to June of 1983, that the daily herd average per day through August of 1983 was approximately 12,554 pounds and that her average monthly cash flow for 1983 was presently $35,182.39, more than $20,000 less than her projected figure for 1984. Mrs. Frost also conceded that the debtors had attempted and failed to obtain long term financing from the Federal Land Bank and the PCA. She valued the debtors' farm at $736,000, the same value which was recently established by an appraisal on the farm. Her statements and estimations were corroborated by Mr. Frost's testimony. The debtors presented no further evidence to support their formative plan.

The creditors seeking to dismiss this case presented the testimony of several witnesses questioning the feasibility of the debtors' proposals. Chief among these witnesses were Ed Bass, Phillip K. Baddour and Jimmy Mooney. Mr. Bass has been a dairy farmer for 30 years in Giles County, Tennessee, and his dairy herd has been listed 95% of the time by the Dairy Herd Improvement Association as one of the top five herds in Giles County. He testified that any dairy farmers similarly situated to

the debtors could not increase their daily average of milk poundage to 15,000 or 18,000. Mr. Bass stated that the only possible way such a substantial increase could be obtained in a year was "if the dairy farmer got lucky."

Mr. Baddour, a certified public accountant in Pulaski, conducted an indepth analysis of the Frosts' case. He found that the debtors' negative cash flow had increased annually since 1977 and that, even assuming the debtors' projections could be achieved, there would still be a significant shortfall in attaining a sufficient cash flow to begin repayment of the debtors' long term debt. As regards the debtors' estimations, Mr. Baddour testified he was unaware of any herd which had previously achieved the level of milk production sought by the debtors. Mr. Baddour also stated the debtors would be in great need to incur additional capital expenses which they apparently could not obtain. He concluded that, under these circumstances, the debtors had no reasonable likelihood for reorganization.

Finally, Mr. Mooney, a vice president with Union Bank who frequently supervised loans to regional dairy farmers, testified that the dairy farm business is now less profitable because of increased expenditures and the imposition of a new federal milk tax. Mr. Mooney further observed that he was unaware of any one who was willing to loan additional funds to the debtors so they could increase the size of their herd. Mr. Mooney believed these and other factors would seriously impede the debtors' chances for reorganization.

In light of the record, this court has no alternative but to grant the various creditors' motions to dismiss this Chapter 11 case. The standards governing the dismissal of a Chapter 11 case are set forth in 11 U.S.C.A. § 1112(b) (West 1979), which provides in relevant part as follows:

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause, including—

(1) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation;

(2) inability to effectuate a plan;

(3) unreasonable delay by the debtor that is prejudicial to creditors;

. . . . .

The aforementioned three criteria constituting cause for dismissal are clearly established in this case. The debtors filed their petition in this court in January of 1983. As of this date, almost a year after this petition was filed, the debtors have failed to submit a plan of reorganization to this court. Such a delay is indefensible and is certainly prejudicial to the creditors in this case who have not received payment of any kind since the debtors initiated this petition. As this court has previously observed in a similar context, the debtors cannot remain under the protective umbrella of this court for almost a year without proposing a substantive plan of reorganization or providing any meaningful payments to creditors. *In re Lehnert,* No. 181–02867, slip op. at 4 (Bkrtcy.M.D.Tenn. Oct. 8, 1982). Furthermore, this court is convinced that the proposals for reorganization submitted by the debtors are not only unattainable but also unrealistic. The debtors' estimated cash flow of $58,000 per month for 1984 is nearly double the amount of its monthly cash flow for 1983, a year largely unaffected by the quarantine which had been placed on the debtors' herd. Moreover, the projections for daily milk increases to generate this sum are much higher than the debtors are now producing and are predicated in large part on an increase in herd size which the debtors have no funds to procure. Finally, the debtors' proposals are not corroborated by any independent testimony and are in fact directly contradicted by the experts presented by the creditors.

In short, the debtors' estimations constitute mere speculation based on highly questionable data which is neither corroborated

or confirmed by independent sources. The court, therefore, concludes that the debtors' lack a reasonable likelihood of rehabilitation. *See In re Egan,* 33 B.R. 672, 677 (Bkrtcy.N.D.Ill.1983); *In re Tracey Service Co.,* 17 B.R. 405, 409–410 (Bkrtcy.E.D.Pa. 1982); *In the Matter of K.C. Marsh Co.,* 12 B.R. 401, 403 (Bkrtcy.D.Mass.1981).

The court will accordingly enter an order dismissing the debtors' Chapter 11 case. This court is sympathetic to the debtors' plight, which confronts a substantial number of dairy farmers within this court's jurisdiction. A number of these dairy farmers have sought relief in this court under the provisions of Chapter 11 and have been able to formulate plans of reorganization which are apparently working. The debtors in this case, however, have been unable to effectuate such a plan to the detriment of their creditors who have not received any type of payment for almost a year now. At some point the debtors' attempts to operate under Chapter 11 must, if unsuccessful, yield to the pleas of creditors who are seeking repayment of their indebtedness. This case has reached that point, and therefore, must be dismissed.

IT IS, THEREFORE, SO ORDERED.