NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1311
_____

IN RE:  LOWER BUCKS HOSPITAL

THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,

Appellant
_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-12-cv-03399)
District Judge: Honorable Timothy J. Savage
_____

Argued June 12, 2014

Before: AMBRO and BARRY, <u>Circuit Judges</u>
and RESTANI,[*] <u>Judge</u>

(Opinion filed: July 3, 2014)

Christine B. Cesare, Esquire   (Argued)
Howard M. Rogatnick, Esquire
Thomas J. Schell, Esquire
Stephanie Wickouski, Esquire
Bryan Cave LLP
1290 Avenue of the Americas
New York, NY  10104

---

[*] Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

Laurie A. Krepto, Esquire
Natalie D. Ramsey, Esquire
Patrick T. Ryan, III, Esquire
Richard L. Scheff, Esquire
Montgomery, McCracken, Walker & Rhoads, LLP
123 South Broad Street, 28th Floor
Philadelphia, PA  19109

      Counsel for Appellant

Daniel E. Bacine, Esquire
Lisa M. Port, Esquire
Barrack, Rodos & Bacine
3300 Two Commerce Square
2001 Market Street
Philadelphia, PA  19103

D. Alexander Barnes, Esquire   (Argued)
Edmond M. George, Esquire
Obermayer, Rebmann, Maxwell & Hippel LLP
One Penn Center, 19th Floor
1617 John F. Kennedy Boulevard
Philadelphia, PA  19103

      Counsel for Appellee

_____

OPINION

_____

AMBRO, <u>Circuit Judge</u>

The Bank of New York Mellon Trust Company, N.A. ("BNYM") appeals the order of the District Court that affirmed a Bankruptcy Court decision denying approval of a release provision in the plan of confirmation of  Debtor Lower Bucks Hospital (the "Debtor" or "Lower Bucks").  The provision purported to prohibit a class of creditors that

held corporate bonds in the Debtor from bringing claims against their trustee, BNYM. Because we agree that the third-party release was not adequately disclosed, we affirm.

## I.     Background

In 1992, Lower Bucks issued bonds to refinance some of its debt and fund various capital improvements. The debt was secured by an interest in the gross revenues of Lower Bucks. An indenture trustee was appointed to act on behalf of the holders of the bonds (the "Bondholders") and was responsible for, among other things, maintaining an accurate financing statement with respect to the Bondholders' security interest.

Lower Bucks filed for bankruptcy in 2010. When it did, it still owed about $26 million in principal and interest to the Bondholders. The debt should have held a secured status given the security interest in the gross revenues. However, Lower Bucks filed an adversary proceeding against BNYM (who became indenture trustee in 2007) alleging the indenture trustee failed to maintain a correct financing statement with respect to the Bondholders' security interest during the Debtor's name changes in 1997 and 2006. Although BNYM amended the financing statement in October 2009 to reflect the correct name of the Debtor, that was within 90 days of the bankruptcy filing and thus the secured claim, if based on that version of the financing statement, was voidable as a preference under 11 U.S.C. § 547(b). BNYM contested the allegations, arguing that, under the terms of the bond documents, Lower Bucks was required to notify BNYM when it changed its name.

Lower Bucks and BNYM ultimately settled the adversary proceeding: in exchange for Lower Bucks giving the Bondholders secured status, their secured claim was reduced

3

to $8.15 million. Included within the settlement were releases not only between the agreement's signers (Lower Bucks and BNYM) but also a provision releasing all claims by the Bondholders against BNYM (the "Third-Party Release" or "Release"). The proposed settlement was presented to Bankruptcy Judge Frank via a Rule 9019 motion. The transcript of the hearing and subsequent events reveal that Judge Frank was not aware of the Third-Party Release. Although there were brief references to it in the motion, App. at 1040, and in a related proposed order, *id.* at 1062, his questions at the hearing demonstrated that he did not know of the Release, and no party took the opportunity to direct his attention to it. *See id.* at 1072-74, 1078-80.

It is in this context that Judge Frank approved the settlement and Lower Bucks later filed a proposed plan of reorganization and disclosure statement. In those filings, the Third-Party Release was referenced on page 42 of the plan (out of 47 pages), *id.* at 1174, and on page 55 of the disclosure statement (out of 62 pages). *Id.* at 1262. In neither instance was the Release highlighted or emphasized in any way. Still unaware of the Release, Judge Frank approved the disclosure statement and it was distributed to the Bondholders.

In the wake of Judge Frank's approval of the disclosure statement, Appellee-Bondholder Leonard Becker took several steps to challenge the Third-Party Release and BNYM's actions with respect to the settlement. First, he filed a motion asking the Bankruptcy Court to reconsider its earlier approval of the settlement.[1] He then filed a putative class-action lawsuit in the Eastern District of Pennsylvania alleging that BNYM

---

[1] Becker withdrew the motion, however, before Judge Frank reviewed it.

breached its contractual and fiduciary duties to the Bondholders by failing to maintain proper financing statements with respect to their security interest. Finally, Becker filed an objection to the proposed plan, arguing that the provision was "an impermissible, non-crucial, nondebtor third[-]party release[]" that was not properly disclosed. *Id.* at 1716.

Judge Frank entered an order amending his earlier approval of the settlement to clarify that it did not limit the ability of the Bondholders to bring claims against BNYM. Because of questions surrounding the Third-Party Release and the risk of jeopardizing the reorganization of Lower Bucks (with the resulting chaos affecting it as well as its staff and patients), at the confirmation hearing the parties (including BNYM) jointly requested that Judge Frank sever the Third-Party Release from the proposed plan and hold a separate hearing on that provision at a later date. He agreed, and in December 2011 approved the proposed plan of reorganization without the Release.

After a post-confirmation hearing in March 2012, Judge Frank issued a detailed opinion denying approval of the Third-Party Release. *In re Lower Bucks Hosp.*, 471 B.R. 419 (Bankr. E.D. Pa. 2012). He candidly acknowledged that he "did not notice, and certainly did not appreciate, the legal significance of" the Third-Party Release during the Rule 9019 hearing. *Id.* at 432. He emphasized that, in response to questions he posed throughout the hearing that should have prompted the litigants to direct the Court's attention to the Release, counsel for Lower Bucks and BNYM repeatedly failed to apprise him of it. *Id.* at 432-36. He concluded his discussion of the hearing as follows:

> [W]hat is perhaps most disappointing is that in a hearing filled with opportunities for counsel to reveal the existence of the Third[-]Party Release—a provision that BNYM now contends was a critical part of the global settlement and that [Lower

Bucks] acknowledge[s] was the product of intense negotiation—at no point did any attorney disclose candidly that the . . . Proposed Findings [in the order] . . . were requested to provide a foundation for approval of the Third[-]Party Release. Whether purposeful or not, counsel's conduct served to conceal this material issue from the court.

*Id.* at 435-36.

Next, Judge Frank reviewed the substance of the various disclosures sent to the Bondholders and concluded that "the Bondholders did not receive adequate disclosures before they voted to accept the Plan." *Id.* at 459. He found that "there was nothing conspicuous regarding the disclosure of the Third[-]Party Release in any of the documents sent to the Bondholders[,]" *id.* at 460, and that the disclosure statement "failed to provide the Bondholders with any information regarding the merits or value of the potential claims against BNYM that would be released by the Plan." *Id.* at 462. Thus he held that the disclosure to the Bondholders was inadequate and that the Third-Party Release could not be approved as a non-consensual release absent adequate disclosure.

BNYM appealed the Bankruptcy Court's order to the District Court, where Judge Savage affirmed. BNYM now appeals.[2]

## II.    Standard of Review

"We exercise plenary review over the District Court's appellate review of the Bankruptcy Court's decision and exercise the same standard of review as the District

---

[2] The Bankruptcy Court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157 because the Third-Party Release related to the proposed plan of confirmation of Lower Bucks. Specifically, the bond documents required Lower Bucks to indemnify the indenture trustee (BNYM), thus satisfying the necessary nexus between the release and the bankruptcy. *See In re Lower Bucks Hosp.*, 488 B.R. 303, 312-16 (E.D. Pa. 2013). We have jurisdiction under 28 U.S.C. §§ 1291 and 158(d).

Court in reviewing the Bankruptcy Court's determinations." *In re Miller*, 730 F.3d 198, 203 (3d Cir. 2013) (internal quotation marks and citation omitted). "[W]e review a bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercises of discretion for abuse thereof." *Id.* (alteration in original) (internal quotation marks and citations omitted).

The parties dispute what standard of review should apply to the Bankruptcy Court's determination that the Third-Party Release was not adequately disclosed to the Bondholders. The District Court reviewed for abuse of discretion. *See In re Lower Bucks Hosp.*, 488 B.R. 303, 317 (E.D. Pa. 2013) (citation omitted). We agree that the determination under 11 U.S.C. § 1125(a) "is subjective and made on a case by case basis [and] . . . . is largely within the discretion of the bankruptcy court." *In re Tex. Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988). Thus we too review for abuse of discretion. *See id.; see also Tenn-Fla Partners v. First Union Nat'l Bank of Fla.*, 229 B.R. 720, 733 (W.D. Tenn. 1999); *In re Aspen Limousine Serv., Inc.*, 193 B.R. 325, 334 (D. Colo. 1996); *C.J. Kirk v. Texaco, Inc.*, 82 B.R. 678, 681 (S.D.N.Y. 1988); *cf. In re BH & P, Inc.*, 949 F.2d 1300, 1313 (3d Cir. 1991) ("Historically, bankruptcy courts have been accorded wide discretion in connection with fact-intensive matters . . . . The bankruptcy judge is on the front line, in the best position to gauge the ongoing interplay of factors and to make the delicate judgment calls which such a decision entails." (quoting *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987))). "[A]n abuse of discretion exists where the . . . decision rests upon a clearly erroneous finding of fact, an errant conclusion of

7

law, or an improper application of law to fact." *In re SGL Carbon Corp.*, 200 F.3d 154, 159 (3d Cir. 1999) (citation omitted).

We exercise *de novo* review over the procedural aspects of the Bankruptcy Court's decision to amend its earlier determination about the adequacy of disclosure. We similarly review *de novo* its decision to deny approval of the non-consensual Third-Party Release. Both issues present purely legal questions. *In re Telegroup, Inc.*, 281 F.3d 133, 136 (3d Cir. 2002).

## III.  Analysis

Section 1125 of the Bankruptcy Code requires that a court approve a disclosure statement as containing "adequate information," which is "information of a kind, and in sufficient detail, . . . that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a)(1). Federal Rule of Bankruptcy Procedure 3016 further requires that "[i]f a plan provides for an injunction . . . , the plan and disclosure statement shall describe in specific and conspicuous language (bold, italic, or underlined texts) all acts to be enjoined and identify the entities that would be subject to the injunction." Fed. R. Bankr. P. 3016(c). The Third-Party Release is, for practical purposes, an injunction, as it, by releasing BNYM, bars the Bondholders from suing it. Indeed, the initial order approving the settlement purported to "permanently enjoin[] [the Bondholders] from asserting, pursuing

or prosecuting, in any manner and in any forum, any and all claims and causes of action . . . against . . . the Bond Trustee[.]" App. at 1112.[3]

For the reasons explained in Judge Frank's candid and comprehensive opinion accompanying his order denying approval of the Third-Party Release, we discern no abuse of discretion in his determination that it was not adequately disclosed. As noted, the reference to the Release in the disclosure statement was contained in a single paragraph in a 62-page document. *Id*. at 1262. No use was made of underlined, italicized or boldfaced text to emphasize the Release or to distinguish it from the more typical releases between the parties to the settlement.

The reference in the proposed plan of reorganization was even less direct and similarly obscured by myriad other information disclosed. *Id*. at 1174. The Release was also omitted from numerous sections of the disclosure statement where it was arguably relevant, including: (1) Summary of Key Terms of the Plan; (2) Summary of Distributions Under the Plan; (3) The Bond Trustee Litigation; (4) Treatment of Claims Against the Debtors; and (5) Conditions Precedent to Confirmation of the Plan and the Occurrence of the Effective Date. *See Lower Bucks*, 471 B.R. at 437-38, 461. As Judge Frank explained, "[i]n both presentation and placement, the documents sent to the Bondholders did not differentiate the Third[-]Party Release from any of the other information provided, and no effort was made to bring the existence of the Third-Party Release to the eyes and attention of the Bondholders." *Id.* at 460. Far from an abuse of

---

[3] Once Judge Frank realized the potential implications of that order, he amended it to delete the language enjoining the Bondholders. App. at 2089-91.

discretion, the record in this case amply supports Judge Frank's conclusion about the inadequacy of disclosure.

We also reject BNYM's argument that, because Judge Frank initially approved the disclosure statement, he could not revisit or reconsider that decision. Federal Rule of Bankruptcy Procedure 9024 incorporates Rule 60(b) of the Federal Rules of Civil Procedure and allows bankruptcy courts, like district courts, to reconsider earlier orders in the case of "mistake, inadvertence, surprise, . . . excusable neglect," "newly discovered evidence," or "any other reason that justifies relief." Fed. R. Civ. P. 60(b); *see also In re Kirwan*, 164 F.3d 1175, 1177 (8th Cir. 1999) (noting a bankruptcy court's "broad remedial powers" to revisit claim approval *sua sponte*). When Judge Frank reviewed the disclosure statement and, even earlier, the proposed settlement between Lower Bucks and BNYM, he was unaware of the Third-Party Release. That was due in no small part to the parties' failure to disclose adequately or otherwise draw the Court's attention to that provision. Once he became aware of the Release (through Becker's objection to the proposed plan), it was within the Bankruptcy Court's discretion to revisit its approval of the disclosure statement in light of the new information. Any other rule would encourage debtors to obscure information in their disclosure statements.

Finally, the Bankruptcy Court was correct to withhold approval of the non-consensual Third-Party Release. In *In re Continental Airlines*, 203 F.3d 203 (3d Cir. 2000), we left open the possibility that some small subset of non-consensual third-party releases might be confirmable where the release is "both necessary [to the plan of confirmation] and given in exchange for fair consideration." *Id.* at 214 n.11. We

10

identified the "hallmarks" of a permissible non-consensual third-party release as "fairness, necessity to the reorganization, and specific factual findings to support these conclusions[.]" *Id.* at 214.

We agree with Judge Frank that this is not an appropriate case for approval of a non-consensual third-party release. In the absence of adequate disclosure, it is impossible to conclude that "a large majority of the Bondholders supported the Plan and acquiesced to the release of their potential claims against BNYM." *Lower Bucks*, 471 B.R. at 462. If the Bankruptcy Judge was not aware of it, it seems highly unlikely that a typical Bondholders was. Put simply, we cannot conclude that the Release was exchanged for adequate consideration or was otherwise fair to the Bondholders. *See Continental*, 203 F.3d at 215; *In re Spansion, Inc.*, 426 B.R. 114, 144 (Bankr. D. Del. 2010) (describing an element of the *Continental*-derived test as "whether the non-consenting creditors received reasonable compensation in exchange for the release").

Key terms of a plan of confirmation, particularly those that release a non-debtor from claims by creditors, must be adequately disclosed. Failure to do so in a clear and conspicuous manner risks excision of the release from the plan. That is what occurred here, and thus we affirm.