**In re The STANLEY HOTEL, INC., Debtor.**

**Bankruptcy No. 80 B 01741 M.**

United States Bankruptcy Court, D. Colorado.

Sept. 8, 1981.

David Schwartz, Denver, Colo., for the Trustee Steven L. Zimmerman.

Charles E. Matheson, Denver, Colo., for Frank J. Normali.

Jimmye S. Warren, Asst. U.S. Atty., Denver, Colo., for the United States of America.

Vicki Porter, Denver, Colo., for the Consumer Creditor's Committee.

## MEMORANDUM OPINION

JOHN P. MOORE, Bankruptcy Judge.

THE ISSUE before the Court concerns the adequacy of three Disclosure Statements submitted by the Trustee in this case, Steven L. Zimmerman, in support of a Chapter 11 Plan of Reorganization. After notice and a hearing at which arguments were heard upon objections to the Disclosure Statements, the matter was taken under advisement. I ordered the submission of simultaneous briefs, one of which was filed by the Trustee and Club Holiday Stanley Investment Group, Inc.[1] (Club Holiday) and another by Frank J. Normali, a creditor.

■ Any analysis of the adequacy of a disclosure statement must begin by ascertaining the purposes Congress intended a statement to serve. From this, we may develop a yardstick against which the statements here involved can be measured. It is required by 11 U.S.C. § 1125(b) that, before an acceptance or rejection of a Chapter 11 plan may be solicited, a written disclosure statement must be transmitted to each claimholder or interestholder who will vote upon the plan. Clearly, if acceptances need not be solicited, a disclosure statement is not required. *In re Union County Wholesale Tobacco & Candy Co., Inc.*, 8 B.R. 442 (Bkrtcy.D.N.J., 1981). Before the disclosure statement may be transmitted, it must be "approved, after notice and a hearing, by the court as containing adequate information." This latter phrase determines the task here at hand. What is "adequate information", and do the disclosure statements at issue here contain it?

■ 11 U.S.C. § 1125(a) provides:

In this section—

(1) "adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan; and

(2) "investor typical of holders of claims or interests of the relevant class" means investor having—

(A) a claim or interest of the relevant class;

(B) such a relationship with debtor as the holders of other claims or interests of such class generally have; and

(C) such ability to obtain such information from sources other than the disclosure required by this section as holders claims or interests in such class generally have.

In short, then, the purpose of a disclosure statement is to inform equity holders and claimants, as fully as possible, about the probable financial results of acceptance or rejection of a particular plan. Moreover, since no plan proponent is expected to be able to predict the future with unerring accuracy, the information to be provided should be comprised of all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan.

■ While § 1125(a) does not provide a specific list of elements that must be present in order for a disclosure statement to fulfill its purposes, it does aid in an understanding of those things that are not necessarily required in order to gain approval of a disclosure statement. In the first place, § 1125(a) makes clear the purpose of a disclosure statement is not to assure acceptance or rejection of a plan, but rather is to provide enough information to

---

1. Club Holiday has entered into a purchase agreement with the Trustee which will be consummated if the plan is confirmed. Under the plan, Club Holiday will acquire the Debtor's assets and liabilities.

interested persons so they may make an informed choice between two alternatives. So, for example, a disclosure statement's internal inconsistencies—such as those alleged by Mr. Normali to be present in the statements considered here—should not necessarily bar its approval. " . . . Rather than resulting in a denial of the approval of the disclosure statement, [inconsistencies] simply illustrate to the reader of the disclosure statement why they should not vote for the plan as proposed. That is what a disclosure statement is supposed to do." *In re Hughes Marina, Inc.,* 6 B.C.D. 978 (Bkrtcy.W.D.N.Y., 1980).

■ I believe the same must be said for alleged illegalities in the plan. In this regard, I find nothing in the Code which indicates a duty on the part of a plan proponent to foresage the Court's rulings upon the plan. Indeed, it must logically be presumed that no proponent would proffer a plan containing known legal defects. Hence, requiring the proponent to look for and disclose suspected infirmities tends to the ridiculous. Additionally, one must surmise that the Court will properly exercise its responsibility to assess the legal merit of any plan at the confirmation hearing, and that this function will be performed regardless of the vote of the creditors.

In establishing the disclosure statement requirements, Congress expressly recognized that businesses seeking the protection of Chapter 11 cannot always be expected to have available information prepared with the same expertise and precision as that of a healthy and solvent enterprise. The resultant recognition of the necessity for flexible disclosure requirements to be administered by the courts is evidenced in both the legislative history of the pertinent sections, and in the statute itself. As explained in the Report of the Senate Judiciary Committee:

> Both the kind and form of information are left essentially to the judicial discretion of the court, guided by the specification in subparagraph (a)(1) that it be of a

kind and in sufficient detail that a reasonable and typical investor can make an informed judgment about the plan. The information required will necessarily be governed by the circumstances of the case.

Reporting and audit standards devised for solvent and continuing business do not necessarily fit a debtor in reorganization. Subsection (a)(1) expressly incorporates consideration of the nature and history of the debtor and the condition of its books and records into the determination of what is reasonably practicable to supply. Senate Report No. 95–989, p. 121, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5907.

The words of the statute reflect this intent to establish a variable standard as to what is adequate. For example, § 1125(b) states: "The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets." Section 1125(a)(1), quoted above, adopts a standard of reasonable practicability in light of the debtor's books, records, nature, and history. Section 1125(d) provides, in part: "[W]hether a disclosure statement contains adequate information is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation."

These provisions give a great deal of discretion to a court considering the adequacy of a disclosure statement, and I will apply this discretion, in light of the need for information adequate to enable an informed choice, to ruling upon the many specific and detailed objections various parties have made to these disclosure statements. Before doing so, however, I will deal with what I see as the seminal objection—the contention that the plan and its underlying transactions constitute a "security" which is not qualified for any exemption, and therefore the disclosure statement must include, or call for, the issuance of a prospectus and the filing of a registration statement prior to solicitation of plan acceptances or rejections.

■ In my judgment, the argument that the disclosure statement itself must contain the same information as a prospectus or registration statement is readily refuted by the plain language of § 1125(d):

> Whether a disclosure statement contains adequate information is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation . . .

As the legislative history of this section makes clear, this provision is meant to free the court of the need to follow any otherwise applicable law in determining the adequacy of a disclosure statement, including the registration and disclosure requirements of the Securities Act of 1933. Senate Report No. 95–989, p. 121.

■ However, the objections raised by Mr. Normali also appear to assert that even if the type of information the Securities Laws would require need not be included in the disclosure statement itself, a separate prospectus and registration statement are still required in order for the plan to be offered to creditors. In a closely reasoned argument, Mr. Normali asserts that the contract whereby Club Holiday is to purchase the Stanley Hotel, the deed of trust to secure Club Holiday's obligation and the Chapter 11 plan to eventually satisfy creditors with the proceeds of this transaction, taken together, constitutes an "investment contract" and therefore a "security" subject to the securities disclosure and registration laws. Normali further contends that there is no exemption available to relieve the debtor from these strict requirements. I disagree.

Regardless of whether a "security" is involved, the necessary exemption is provided by 11 U.S.C. § 1145. Section 1145 is entitled "Exemption from securities laws" and provides, in pertinent part:

> (a) Except with respect to an entity that is an underwriter as defined in subsection (b) of this section, section 5 of the Securities Act of 1933 (15 U.S.C. 77e) and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security does not apply to—
>
> (1) the offer or sale under a plan of a security of the debtor, of an affiliate participating in a joint plan with the debtor, or of a successor to the debtor under the plan—
>
> (A) in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor or such affiliate; or
>
> (B) principally in such exchange and partly for cash or property;
>
> (2) the offer of a security through any warrant, option, right to subscribe, or conversion privilege that was sold in the manner specified in paragraph (1) of this subsection, or the sale of a security upon the exercise of such a warrant, option, right, or privilege;
>
> (b)(1) Except as provided in paragraph (2) of this subsection, an entity is an underwriter under section 2(11) of the Securities Act of 1933 (15 U.S.C. 77b(11)), if such entity—
>
> (A) purchases a claim against, interest in, or claim for an administrative expense in the case concerning, the debtor, if such purchase is with a view to distribution of any security received or to be received in exchange for such a claim or interest;
>
> (B) offers to sell securities offered or sold under the plan for the holders of such securities;
>
> (C) offers to buy securities offered or sold under the plan for the holders of such securities, if such offer to buy is—
>
> (i) with a view to distribution of such securities; and
>
> (ii) under an agreement made in connection with the plan, with the consummation of the plan, or with the offer or sale of securities under the plan; or
>
> (D) is an issuer, as used in such section 2(11), with respect to such securities. . . .

(3) An entity other than an entity of the kind specified in paragraph (1) of this subsection is not an underwriter under section 2(11) of the Securities Act of 1933 with respect to any securities offered or sold to such entity in the manner specified in subsection (a)(1) of this section.

Mr. Normali first argues that by the definitions contained in subsection (b) of § 1145, Club Holiday is an underwriter, and is therefore, under § 1145(a), not covered by the exemption that this section provides. Normali bases this contention upon § 1145(b)(1)(D), which states that an entity is an underwriter if it is an "issuer", as used in § 2(11) of the Securities Act of 1933, and asserts that since Club Holiday is issuing the purported security, it falls within the ambit of § 2(11).

While a superficial reading of the applicable sections might yield this result, it is my conclusion that the true meaning and intent underlying § 1145 is otherwise. First of all, if every issuer of securities were excluded from the protection of § 1145, as would be the case under Mr. Normali's reading of that section, § 1145 would provide no exemption from Securities Laws at all—and clearly, the existence of that section indicates that an exemption was intended. A clue to the intent of the apparently ambiguous language of § 1145(b)(1)(D) is found in the Senate Report of the Judiciary Committee regarding § 1145:

Subsection (b) ... specifies the standards under which a creditor, equity security holder, or other entity acquiring securities under the plan may resell them .... Senate Report No. 95–989, p. 131, U.S. Code Cong. & Admin.News 1978, p. 5917.

A further explanation of § 1145(b)(1)(D) is found in 5 *Collier on Bankruptcy* § 1145.02, pp. 1145–33ff. (15th Edition):

Considering section 1145(b)(1)(D) in terms of its legislative history, it is submitted that the reference to "issuer", as used in section 2(11) of the Securities Act, was intended to pick up only the latter portion of the definition which states that:

"As used in this paragraph the term 'issuer' shall include in addition to an issuer, any person directly or indirectly controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer." ...

One of the problems presented by the drafting of section 1145 is that section 1145(b)(1)(D) states that "underwriter" under section 2(11) of the Securities Act includes an entity that "is an issuer, as used in ... section 2(11), with respect to such securities." Notwithstanding the failure of the draftsmen to redefine the language of section 1145(b)(1)(D), *it is submitted that the draftsmen of the Code did not intend that the debtor or its successor, as "issuers" of securities under a plan, be considered an underwriter by reason of section 1145(b)(1)(D).* If the debtor, as an "issuer" of securities for the purposes of section 2(11) of the Securities Act, were to be included within the definition of "underwriter" in section 1145(b)(1), the principal purpose of section 1145 would be undercut since the exemption from registration contained in section 1145(a) would not be available. The legislative history of section 1145 is clear that subsection (b) has a limited purpose, namely to define "real underwriters" that participate in a "classical underwriting" who should be required to register securities received under a plan prior to reselling such securities in the after market. *Thus, only dealers and "real" underwriters are subject to the registration requirements of the Securities Act.* "Technical" underwriters are exempted by reason of section 1145(b)(2) & (3), and "issuers" are exempted under section 1145(a) by construing the reference to "issuer" in section 1145(b)(1)(D) to mean control person. (emphasis added)

I find the above discussion convincing, and hence adopt its reasoning regarding the

meaning of § 1145(b)(1)(D). I therefore hold that Club Holiday is not an underwriter for the purposes of § 1145.[2]

Normali's second argument contends that Club Holiday is neither the debtor, an affiliate of the debtor, nor a successor of the debtor, and therefore does not fall within the definition of those exempted from securities compliance under § 1145(a). Both the brief submitted by Mr. Normali and that submitted jointly by the Trustee and Club Holiday have extensively explored the issue of whether Club Holiday is a "successor" of the Debtor. Although no bankruptcy cases are cited on this point, cases from other areas of the law help to develop the reasonable guidelines.

■ A "successor" to a corporation is generally considered to be an entity which becomes invested with the rights and assumes the burdens of the first corporation, and which is thereafter responsible for prior liens upon corporate property, and all the debts, liabilities, and duties of the first corporation. *In re New York, S. & W. Railroad Co.*, 109 F.2d 988 (3d Cir., 1940). To be a successor, "in all material respects the succeeding corporation should stand in the boots of the old one." *Dunkley Co. v. California Packing Corp.*, 277 F. 996 (2d Cir., 1921), *cert. den.* 257 U.S. 644, 42 S.Ct. 54, 66 L.Ed. 413 (1921).

■ I find that Club Holiday, pursuant to the plan, will "step into the boots" of Stanley Hotel, Inc., for all relevant purposes. Club Holiday will assume the goodwill, property rights, and major asset of the Debtor, and will also undertake to be burdened with the Debtor's liabilities and obligations. Therefore, I conclude Club Holiday is a "successor" to the Debtor for the purposes of § 1145.

Normali's final argument, that the purported security is not "offered under" the plan and therefore is not protected under § 1145, mystifies me. If the combination of the purchase agreement, deed of trust, and plan constitutes a security as Mr. Normali contends, clearly that security is "issued under" this plan, for without the plan, no "security" would be offered at all!

Based on the conclusions I have expressed, I hold that § 1145 applies to exempt the proposed plan from the Securities disclosure and reporting laws.

As to the remaining objections, I have considered them in the light of the principles heretofore discussed, and have concluded that some have no merit, while others are valid. While these objections are too numerous for each and every one to be discussed here,[3] it is appropriate to make comments and orders for amendment. In this light, however, I believe one overriding consideration must be observed.

■ A disclosure statement must be meaningful to be understood, and it must be understood to be effective. Thus, what lawyers regard as useful information based upon their experience might be meaningless verbiage in the hands of a "typical" investor. Accordingly, by overburdening a proponent's disclosure statement with information significant and meaningful to lawyers alone may result ultimately in reducing the disclosure statement to an overlong, incomprehensible, ineffective collection of words to those whose interests are to be served by disclosure. Thus, compounding a disclosure statement for the sake of a lawyer's notion of completeness, or because some additional information might enhance one's understanding, may not always be necessary or desirable, and the length of a document

---

**2.** This conclusion is further bolstered by a bill and its accompanying Senate Report passed by the Senate on July 17, 1981, currently before a House committee, entitled the "Bankruptcy Amendments Act of 1981", which indicates that exclusion from § 1145 protection was meant to apply "at the resale stage" and not to initial issues. S. 863, 97th Cong., 1st Session, Sec. 111; Sen.Rep. 97–150, 97th Cong., 1st Session, 1981, p. 17.

**3.** In fact, opportunity was given for every objection to be discussed in open court.

should not be the test of its effectiveness.[4] With this concept in mind, let us turn to the remaining issues.

██ I do not find it necessary for the Trustee to send copies of the proposed Club Holiday Use Contract, Escrow Agreement, Master Lease, and Maintenance Association Agreement to each creditor. It is sufficient that these be made available at the Trustee's office, and that such availability be disclosed;

It is necessary that the Trustee shall make all amendments to and changes as agreed at the disclosure statement hearing. These changes include:

1) Correction of all typographical errors, including those pointed out by all objectors;

2) Disclosure of the respective cost of an "interval week" in each specific season, and of the dates through which each season will run;

3) Explanation that there is, as yet, no firm commitment from "Interval International", but only a qualified acceptance, together with a brief explanation of the letter from "Interval International" and the state of negotiations with "Interval International" and other time-share organizations;

4) Inclusion of an explanation that acceptance of the plan does not constitute acceptance of a Club Holiday Use Contract;[5]

5) Explanation that there is no claim asserted by Stanley Management Company, Inc., as to the ownership of personal property;

6) Deletion of the reference, on page 10 of the Amended Disclosure Statement for classes 2, 3, 4, 5, 6, 7, 8, 9, and 12, to

an action commenced by the Attorney General of the State of Colorado against Frank Normali;

7) Explanation of Mr. Normali's claim against the Debtor for indemnification in regard to IRS obligations;

8) Clarification that there are no written commitments for intermediate term mortgage financing from Kenne Corporation Mortgage Company or any other lender;

9) Clarification in all disclosure statements, but especially in that going to Class 10 claim holders, that license holders who elect not to convert their interests to a Club Holiday Use Contract will be treated as Class 11 claimholders. This also requires that the Class 10 disclosure statement fully explain the treatment that is to be accorded to Class 11 claimants;

10) Setting forth and discussing the basis for and calculation of the figure of $55,000.00 set as the Trustee's fee;

11) Adjustment of the chart on page 47 and Note 3 disclosures, as agreed, in conjunction with page 20 of objections of Frank J. Normali.

In addition, the Disclosure Statement sent to Class 10 must explain that regardless of whether creditors in that class accept or reject, if the plan is confirmed they will still have a choice whether to convert their interest to a Club Holiday Use Contract. The consequences of refusing conversion (treatment similar to that of a Class 11 creditor) the Class 10 disclosure must include the same disclosure required for Class 11.[6]

The Disclosure Statement for Classes 1 and 11 is clearly inadequate. Since Class 11 is impaired, this Disclosure Statement must be amended to include information on the right to accept or reject, the voting proce-

---

4. Indeed, even this opinion is overburdened by the windyness required to clear the air beclouded by the arguments of counsel.

5. The conversion of a Class 10 claim is spoken of in the Class 10 amended disclosure statement as though it is automatic—this must be clarified.

6. Due to the voting problems that could ensue, it seems improvident to provide that non-acceptance of a Club Holiday Use Contract automatically transforms a Class 10 claim into a Class 11 claim. Therefore, the Plan and Disclosure Statement should be amended so that this problem can be avoided.

dure, and the caveats regarding the information provided—much the same as the information provided in the introductory sections of the other two disclosure statements.

It is not necessary for the Trustee to provide any further information regarding the principals of Club Holiday Stanley Investment Group, Inc. It is also not necessary to the adequate information standard for a Disclosure Statement to specifically state obviously implicit negatives, or to speculate as to future uncertainties, such as the consequences of the various possible outcomes of pending litigation. In my opinion, this is the type of information that merely adds to the length and not the effectiveness of the disclosure.

As to all other aspects not discussed herein, or in open court, I find that the Disclosure Statements submitted by the Trustee provide adequate information under the standards of 11 U.S.C. § 1125. Those statements, when amended in accordance with the above requirements, shall be approved for distribution to the appropriate claimholders along with a copy of the plan. Orders effectuating this purpose shall be entered.