### In re The A.C. WILLIAMS COMPANY, Ravenna Industries, Inc., Miami Foundry Corporation, Debtors.

### Bankruptcy Nos. 581–409 to 581–411.

United States Bankruptcy Court,
N.D. Ohio.

Nov. 30, 1982.

---

David M. Hunter, Akron, Ohio, for debtor.

Harry Mercer, Lee Powar, Cleveland, Ohio, for Creditor's Committee.

Dennis J. Kaselak, Cleveland, Ohio, for eight interested creditors.

James Lowe, Cleveland, Ohio, for creditor, Arden Kackley.

## FINDING

H.F. WHITE, Bankruptcy Judge.

The A.C. Williams Company, Ravenna Industries, Inc. and Miami Foundry Corporation (the Debtors), filed a disclosure statement on November 5, 1982 as required by 11 U.S.C. 1125. Due notice of said hearing on the disclosure statement was given to all creditors as required by law and November 24, 1982 was the last date set for filing objections to the disclosure statement. Two objections to the disclosure statement were filed, one by Arden L. Kackley represented by James A. Lowe and an objection filed by eight unsecured creditors represented by Dennis J. Kaselak.

The hearing was held on the 29th day of November, 1982 at 2:30 PM as set forth in the Notice. The debtors were present represented by counsel, the creditors' committee in the Ravenna Industries, Inc. case appeared represented by counsel, Attorney Lowe and Attorney Kaselak were present on behalf of their objecting clients, and there were other creditors present at said hearing.

The main objection to the disclosure statement by the two objectors was that the Pro Forma of Income and Cash Flow Statement for the years 1983 to 1987 found on page 20, was based upon inadequate information.

The Disclosure Statement for which approval is sought is a 70 page document. Exhibit "A" which is attached to the Disclosure Statement is the Plan of Reorganization.

The Court finds that on pages 25 and 26 of the disclosure statement, the debtors' unaudited consolidated balance sheet as of September 30, 1982 sets forth the book value of the assets and liabilities of the debtors. The Court further finds that the debtors set forth the estimated liquidated value of the assets and liabilities if it were necessary to liquidate these companies under Chapter 7 of the present Bankruptcy Code.

The Court finds from the testimony of Al Spalding and Ron McInnes that the liquidated valuation as set forth in debtors' Exhibits B through O inclusive, does in fact represent the liquidated value of said assets. The Court further finds in debtors' Exhibit A, the disclosure statement, that on page 2 a disclaimer has been made by the debtors as to the future operations which are based on the "best estimates in light of current market conditions, past experience, financing which can reasonably be anticipated to be available, and other factors, all of which are subject to change and any of which may cause the actual results to differ from those projected."

The Court further finds that the debtors set forth the background, history and business of the said debtors and further set forth the events leading to the filing of the Chapter 11 proceeding. The debtors did state on page 5 of the disclosure statement that there were negotiations with Eagle Picher Industries as to an unresolved claim against the debtors by said Eagle Picher Industries as of the date of the preparation of the disclosure statement which claim then approximated 1.4 million dollars although debtors contended that the claim amounted to $750,000.00. At the hearing, it was indicated by counsel representing Eagle Picher and the debtors, that their differences had been resolved. Therefore, it appears to this Court that the disclosure statement should be amended to reveal this fact to the creditors.

The disclosure statement further indicated which divisions and companies the debtors would continue to operate and set forth in detail the terms of the pension plans and their termination. On page 7, the disclosure statement sets forth the summary of the plan of arrangement as proposed including classification of claims as well as other provisions and conditions of said plan. The debtor provided a pro forma income and cash flow statement in the statement and disclosed the identity of the officers and directors of the company following reorganization, setting forth the ages, positions and present salaries.

The disclosure statement also set forth the amount which would be realized through liquidation. The debtors indicated that under its valuation, liquidation would result in the unsecured creditors receiving approximately $1,714,000.00. As pointed out by the attorney for the creditors' committee if the plan was approved, the initial payment to the unsecured creditors could be made on or before February, 1983 and would result in a payment to all creditors in the approximate amount of $2,855,000.00.

The Court finds the disclosure statement did not set forth the executory contract between Arden L. Kackley and the debtors, Arden L. Kackley being a former officer and present shareholder. The debtors indicated that they had not rejected or accepted any executory contracts at this time, but that the plan provides for the assumption of any executory contracts not expressly rejected.

The Court finds the creditors' committee did participate in the drafting of the disclosure statement, the creditors' committee having been very active up to this time in these proceedings and said creditors' committee counsel indicated to the Court that they were satisfied that the disclosure statement was adequate for the requirements of 11 U.S.C. 1125.

## ISSUE

Whether or not this disclosure statement contains information of a kind, and in sufficient detail, as far as reasonably practical to enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan.

## LAW

■ Before acceptances or rejections of a proposed Chapter 11 plan may be solicited, the Court must find that the written disclosure statement contains adequate information. 11 U.S.C. Section 1125(b). Adequate information is defined as meaning "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. 1125(a)(1). What constitutes adequate information under this definition must be determined on a case-to-case basis under flexible standards.

■ In determining the adequacy of a disclosure statement, the Court finds that there are certain criteria which should be set forth in the statement. They are: 1) the incidents which led to the filing of the Chapter 11; 2) a description of available assets and their value; 3) the anticipated future of the company; 4) the source of information for the disclosure statement; 5) disclaimer; 6) present condition of the company while in Chapter 11; 7) claims scheduled; 8) the estimated return to the creditors if liquidated; 9) the accounting process used and the identity of the person who furnished the information; 10) future management of the debtor; 11) plan. The Court found all these criteria have been met. The Court found that each of these items has been set forth in the disclosure statement.

This Court finds· from the testimony of the two appraisers that should liquidation occur, the trade creditors will receive substantially less than they would receive upon confirmation of the plan, not considering the balance of the payments contemplated by the plan. This was adequately pointed out to the Court by the creditors' committee. Further, it has been pointed out to the Court that, as to the objections raised by Arden L. Kackley, a former officer of Ravenna Industries, Inc., it is admitted that Mr. Kackley is now employed by Thompson Aluminum, a competitor of debtors. That fact should be considered by the Court when it rules on Mr. Kackley's objection.

The objecting creditors spent much time at the hearing attempting to prove that the financial statements made in the disclosure statement were incorrect. Whether or not said creditors did in fact prove that there was an inconsistency between the figures as listed in the disclosure statement and those figures as they actually exist, the sole issue before the Court is the adequacy of the information given in the disclosure statement. The inconsistencies which these creditors attempted to prove goes to the feasibility of the Plan, a matter which is more appropriately heard at the time this case comes on for confirmation of the Plan, as provided for under 11 U.S.C. Section 1129(a)(11). *In Re The Stanley Hotel, Inc.,* 13 B.R. 926, 8 B.C.D. 35 (Bkrtcy.D.Co.1981); *In Re Hughes Marina, Inc.,* 6 B.C.D. 978 (Bkrtcy.W.D.N.Y.1980).

■ Attorney Kaselak, on behalf of his group of eight unsecured creditors, also attempted to make an issue as to the adequacy of this disclosure statement in so far as the same does not meet the requirements for a prospectus under federal securities laws. Such an argument must be rejected. As set forth in 11 U.S.C. Section 1125(d), "Whether a disclosure statement contains adequate information is not governed by any otherwise applicable nonbankruptcy law, rule, or regulation . . ." As such the fact that this disclosure statement may not meet the requirements for a prospectus under state or federal securities law is irrelevant.

In arguments before this Court, the objecting creditors raised the propriety of the participation by the creditors' committee in negotiating and formulating a Plan of Reorganization and further in making recommendations to the Court regarding the approval of the disclosure statement. The creditors' committee does not deny this participation.

It is the determination of this Court that the creditors' committee is empowered to act as it did pursuant to 11 U.S.C. 1103(c)(1) and (3). That section, which defines the powers and duties of a creditors' committee, provides in part that:

A committee appointed under section 1102 of this title may—

(1) consult with the trustee or debtor in possession concerning the administration of the case;

(3) participate in the formulation of a plan, advise those represented by such committee of such committee's recommendations as to any plan formulated, and collect and file with the court acceptances of a plan.

The Court finds that it was the intent of Congress that a creditors' committee be active. The creditors' committee has the duty to consult with the debtor/debtor-in-possession regarding the disclosure statement as the same effects the creditors whom they represent. Participation in the formulation of a Plan as well as the making of recommendations regarding a disclosure statement helps to avoid delay in approval of the disclosure statement and also minimizes the costs of administration associated with the approval of a disclosure statement.

The Court would point out that at page 4 of its disclosure statement, debtors have indicated that the debtors' financial statement for the years ending December 31, 1980 and December 31, 1981 are available for inspection by interested parties. Additionally, the debtor-in-possession reports filed by debtors during the pendency of this case are available for review in the office of the Clerk of Courts for the Bankruptcy Court.

This Court finds that the information provided in debtors' disclosure statement is sufficiently adequate to enable the creditors to make an informed judgment about the Plan.

Therefore, it is the conclusion of this Court that debtors' disclosure statement should be approved as filed provided the same is amended so as to disclose the fact that the dispute with Eagle Picher Industries has been settled for the approximate amount of $775,000.00 and further to disclose the existence of an executory contract with Arden L. Kackley.