**In the Matter of STANDARD OIL & EXPLORATION OF DELAWARE, INC., Debtor.**

**Bankruptcy No. GG91–82102.**

United States Bankruptcy Court, W.D. Michigan.

Jan. 24, 1992.

James M. Keller, Grand Rapids, Mich., for Standard Oil & Exploration of Delaware, Inc.

Perry Pastula, Wyoming, Mich., for Force Energy, Inc.

Mark Kehoe, Grand Rapids, Mich., for Wind River Enterprises, Inc.

Jerold Siegan, Chicago, Ill., for Sioux Falls Investors.

Robert Boyt, Chairman of Creditors' Committee.

## OPINION REGARDING DEBTOR'S MOTION TO OBTAIN CREDIT BY ISSUANCE OF NOTES EXEMPT FROM SECURITIES LAWS

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUES

May a chapter 11 debtor in possession issue preconfirmation administrative priority notes to obtain fresh capital? If so, are such notes exempt from the registration and prospectus delivery requirements of federal and state securities laws pursuant to 11 U.S.C. § 364(f)?[1] May those notes then be subsequently exchanged by the reorganized debtor for stock issued at or after confirmation of the debtor's plan as an exempt transaction under § 1145 of the Bankruptcy Code?

### II. PROCEDURAL BACKGROUND

Standard Oil & Exploration of Delaware, Inc. ("Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 12, 1991. No trustee has been appointed and the Debtor is acting as a debtor in possession. 11 U.S.C. §§ 1107 & 1108.

The Debtor filed its Second Amended Motion to Incur Debt by Sale of Notes Exempt From Securities Laws and to Determine Factual and Legal Issues ("Amended Motion") on December 31, 1991.[2] The Debtor requests the following relief: (1) an authorization to obtain credit, pursuant to § 364 of the Bankruptcy Code, in an amount not to exceed $6,500,000 by the issuance of two types of administrative priority notes; (2) a determination that the issuance of the notes is exempt from registration and prospectus delivery requirements of federal and state securities laws pursuant to § 364(f) and § 3(a)(7) of the Securities Act of 1933 ("1933 Act"); and (3) a determination that the reorganized Debtor may, under the proposed plan of reorganization, issue shares of its reorganized stock in exchange for the administrative claims of the noteholders pursuant to the exemption in § 1145 of the Bankruptcy Code.

Notice of hearing of the Amended Motion was properly given to all interested parties, including the SEC and United States Trustee. The hearing was held on January 10, 1992. At the hearing, the court heard testimony from the Debtor's President, Andrew J. Kacic ("Kacic"), and an expert on gas and oil wells, Paul D. McConnell ("McConnell"). The court found both witnesses' testimony to be credible. The court has also reviewed and considered seven exhibits which were admitted into evidence.

The court has jurisdiction over the case pursuant to 28 U.S.C. § 1334. The matter

---

1. Unless otherwise noted, all future statutory references are to Title 11 of the United States Code, sometimes referred to as the "Bankruptcy Code".

2. The Debtor originally filed a motion on October 16, 1991. On November 5, 1991, after reviewing the original motion, the court requested the Debtor to seek a no action letter or some other response from the Securities and Exchange Commission ("SEC"). The SEC responded with a letter on November 19, 1991. The SEC was concerned that options sought to be issued by the Debtor in exchange for the noteholders' administrative claims might be converted to stock before plan confirmation. On December 3, 1991, the court dismissed the original motion without prejudice to file a more specific motion. The Amended Motion has eliminated any options from the proposed note issuance in accordance with the SEC's letter.

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) & (O), and the court has the authority to enter a final order.

## III. FACTS

The Debtor is a publicly held corporation incorporated in 1970.[3] It is engaged in the business of developing and operating oil and gas wells in northern Michigan. The Debtor has 838 equity security holders. (*See* Debtor's Exhibit 5, at 5.)

The Debtor's assets include various interests in gas wells. Kacic testified that the Debtor's principal asset is the Sand Lake Project.[4] The Debtor owns and operates 100% of the working interest in the Sand Lake Project which involves the drilling and completion of seventeen wells located in Antrim County, Michigan. (*See* Debtor's Exhibit 5, at 44–45.) The Sand Lake Project consists of two phases. Phase I is comprised of twelve wells in various stages towards completion. Phase II envisions the addition of five new wells. Construction of the Phase II wells has not commenced. (*See* Debtor's Exhibit 5, at 44–45.)

The Debtor asserts it needs additional funds to: (1) complete Sand Lake Project Phase I; (2) commence and complete Sand Lake Project Phase II; (3) pay chapter 11 administrative expenses; and (4) enter into a gas contract, acquire additional leased acreage, and construct additional pumping wells. (*See* Debtor's Exhibit 3.) Kacic testified that he approached two financial institutions to attempt to borrow the needed funds. Each financial institution declined to advance funds. Kacic testified the financial institutions did not want to loan money to an oil and gas company, especially one which is the subject of chapter 11 proceedings. Kacic and McConnell each testified that obtaining the additional funds is in the best interests of the Debtor and its estate. Assuming completion of the gas wells, entering into a proposed gas con-

tract, and utilizing future revenues for operations and repayment of creditors, Kacic and McConnell opined that a meaningful distribution to unsecured creditors could be made—perhaps as much as a 100% dividend.

The Debtor proposes to issue 8% Promissory Notes ("8% notes") and 13% Senior Subordinated Cumulative Notes ("13% notes"). Kacic believes there will be a market for the notes. When contacting prospective investors, the Debtor, or its agents, will use a Private Placement Memorandum which discloses the Debtor's past business history, its future business plan, and the proposed chapter 11 plan of reorganization. Information regarding the notes, risk factors, various tax aspects, restrictions on transfer, and other important considerations, is also disclosed. (*See* Debtor's Exhibit 5.) The Private Placement Memorandum contains information from the Debtor's Disclosure Statement which has been approved by this court.

The Debtor seeks authorization to issue up to $6,500,000 in 8% and 13% notes. First, the Debtor intends to issue $650,000 in 8% notes. Second, contemporaneous with the issuance of the 8% notes, the Debtor will issue up to $6,500,000 in 13% notes (which amount will include the proceeds from the 8% notes). (*See* Debtor's Exhibit 5, at 8–9.) The Debtor proposes that purchasers of the 8% and 13% notes shall be entitled to administrative priority pursuant to § 503(b)(1)(A). The 8% and 13% notes are different with respect to the Debtor's intended use of proceeds and the proposed payment of principal and interest on the notes.

In connection with the 8% notes, the Debtor requests that: (1) the proceeds may be used immediately to complete Sand Lake Project Phases I & II, pay reasonable and necessary postpetition operating expenses, and pay chapter 11 administrative ex-

---

3. The Debtor was originally incorporated in Colorado under the name Automated Learning, Inc. In 1973, the Debtor merged with and into a Delaware corporation named Automated Information Industries, Inc. In 1987, the company changed its name to Standard Oil and Exploration of Delaware, Inc. (*See* Debtor's Exhibit 5, at 5.)

4. The Debtor also owns working interests of 10% or less in two other projects known as the Try–Ex Wells and Bagley 17. The Debtor does not operate either of these projects. (*See* Debtor's Exhibit 5, at 43–44.)

penses; (2) the principal and interest on the notes shall be repaid to the noteholder on the confirmation date of Debtor's chapter 11 plan by issuing one share of preferred stock for each dollar of administrative claim (each share of preferred stock may be converted into four shares of common stock); and (3) if the Debtor's chapter 11 plan is not confirmed and the case is converted to chapter 7, the noteholders will be entitled to repayment in accordance with the distribution provisions of § 726 of the Bankruptcy Code. (*See* Debtor's Exhibits 1 & 5.)

With respect to the 13% notes, the Debtor proposes that: (1) commencing on the date the issuance of the notes is authorized by the court and ending before the confirmation hearing date of a chapter 11 plan [5], the Debtor will offer for sale a minimum of $1,284,000 and maximum of $6,500,000 in 13% notes (these amounts include proceeds from the 8% notes); (2) the proceeds shall be held in escrow pending the receipt of the minimum amount of $1,284,000 and confirmation of the Debtor's chapter 11 plan or further court order after notice to all interested parties including the noteholders; (3) the principal and interest on the notes shall be repaid to the noteholders on the confirmation date of Debtor's chapter 11 plan by issuing one share of common stock for each dollar of the administrative claim; and (4) if the plan is not confirmed within one year and there is no preconfirmation court order authorizing the Debtor to use the funds in the escrow account, then any funds received will be returned to each noteholder with interest. (*See* Debtor's Exhibits 2 & 5.)

## IV. DISCUSSION

### A. *Issuance of Administrative Priority Notes Outside the Ordinary Course of Business.*

■ Section 364(b) of the Bankruptcy Code authorizes a debtor to obtain credit outside the ordinary course of business after notice and a hearing.[6] Credit obtained under § 364(b) is allowable as a non-priority administrative claim pursuant to § 503(b)(1)(A). "Subsection (b) permits the court to authorize the trustee to obtain unsecured credit and incur unsecured debts other than in the ordinary course of business, such as … to obtain a substantial loan in an operating case." H.R.REP. No. 595, 1st Sess. 346–47 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6303.

As Kacic's testimony demonstrates, the Debtor needs the additional funds to have any likelihood of reorganizing. The Debtor unsuccessfully attempted to obtain the necessary funds through traditional lending from financial institutions. Because of the lack of interest from the financial institutions, the Debtor's only method of obtaining the additional funds appears to be through the unconventional method of issuing exempt notes. This court finds that, under these facts, the issuance of the notes is necessary and outside the ordinary course of business. Therefore, under § 364(b), if the issuance is authorized, the purchaser of each note will hold a non-priority administrative claim pursuant to § 503(b)(1)(A).

### B. *Issuance of Notes Under § 364(f).*

■ The Debtor requests the court to authorize it to obtain credit by the issuance of the 8% and 13% notes. The Debtor asserts that, pursuant to § 364(f) of the Bankruptcy Code, these notes will be exempt from the registration and prospectus delivery requirements of securities laws. This appears to be an issue of first impression under the Bankruptcy Code; the parties and the court have not found any reported decisions which discuss § 364(f). The court believes it may therefore be ap-

---

**5.** The confirmation hearing is scheduled to take place on May 5, 1992. (*See* Order Approving Disclosure Statement and Fixing Time for Filing Acceptances or Rejections of Plan and Notice of Date, Time and Place for Hearing on Confirmation of the Plan Proponents' Joint Chapter 11 Plan dated January 17, 1992.)

**6.** Although § 364(b) only refers to the trustee, a debtor in possession has the ability to obtain credit under § 364. *See* 11 U.S.C. § 1107.

propriate to consider this issue in greater detail than might otherwise be required.

### 1. Analysis of § 364(f).

Except with respect to an entity that is an underwriter as defined in section 1145(b) of this title, section 5 of the Securities Act of 1933 (15 USC 77e), the Trust Indenture Act of 1939 (15 USC 77aaa et seq.), and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security does not apply to the offer or sale under this section of a security that is not an equity security.

11 U.S.C. § 364(f). The legislative history states that § 364(f) continues the exemption from securities laws for certificates of indebtedness found in § 3(a)(7) of the 1933 Act.[7] 124 CONG.REC. H11093 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). The subsection was not intended to change the then existing law.[8] *Id.;* 2 COLLIER ON BANKRUPTCY ¶ 364.07 (15th ed. 1991).

 Section 364(f) states that issuances of certain securities are exempt from the requirements of § 5 of the 1933 Act[9], the Trust Indenture Act of 1939[10] ("1939 Act"), and state or local securities laws involving registration. To be exempt two elements must be satisfied. First, the court must determine that the debtor in possession is not an "underwriter" as defined in § 1145(b) of the Bankruptcy Code. Second, the court must determine that the issuance involves "nonequity securities".

[Section] 364(f) exempts (except with respect to any entity that is an *underwriter under Code § 1145(b))* the offer or sale of *nonequity securities* under Code § 364 from § 5 of the 1933 Act, from the 1939 Act and from any state or local law requiring registration of such nonequity securities, or registration or licensing of the issuer or underwriter of, or a broker or dealer in, such securities.

3 NORTON BANKRUPTCY LAW & PRACTICE § 57.13 (1991) (emphasis added). *See also* Morgan, *Application of the Securities Laws in Chapter 11 Reorganizations Under the Bankruptcy Reform Act of 1978,* 1983 U.ILL.L.REV. 861, 878–79 (1983). For the exemption to apply, the debtor in possession must satisfy the other requirements of § 364. 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.13 (1991); Morgan, *supra,* at 879. Specifically, there must be notice and a hearing and the debtor in possession must demonstrate that it is proper to obtain credit pursuant to one of the prior subsections of § 364.[11] 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.13 (1991).

The legislative history and the commentators support the conclusion that § 364(f) is intended to allow the issuance of debt

---

**7.** Section 3(a)(7) exempts from the 1933 Act "[c]ertificates issued by ... a trustee or debtor in possession in a case under Title 11, with the approval of the [bankruptcy] court." 15 U.S.C. § 77c.

**8.** Under the Bankruptcy Act, a trustee, receiver, or debtor in possession, after notice and a hearing, could incur debt for various purposes, including the operation of the debtor's business, by issuing certificates of indebtedness. *See* § 116(2) of Bankruptcy Act; 6 COLLIER ON BANKRUPTCY ¶ 3.26, at 615–23 (14th ed. 1978). The certificates were debt securities and enabled the debtor to obtain cash *during* the reorganization proceeding. *See* Mitchell, *Securities Regulation in Bankruptcy Reorganizations,* 54 AM.BANKR.L.J. 101, 107–08 (1980). The certificates documented loans and were often accorded a higher priority of distribution. *See* 6 COLLIER ON BANKRUPTCY ¶ 3.26, at 622–23 (14th ed. 1978).

**9.** Section 5 of the 1933 Act pertains to the sale of unregistered securities, and the necessity of complying with prospectus and registration requirements. *See* 15 U.S.C. § 77e.

**10.** 15 U.S.C. §§ 77aaa–77bbb. The parties have not raised the applicability of the 1939 Act. However, if the notes are exempt under § 364(f) of the Bankruptcy Code, the Debtor need not comply with any of the provisions of the 1939 Act. *See* Morgan, *Application of the Securities Laws in Chapter 11 Reorganizations Under the Bankruptcy Reform Act of 1978,* 1983 U.ILL. L.REV. 861, 914 (1983).

**11.** The prior subsection of § 364 which will apply depends on the facts of each case. In this case, the Debtor has only requested that each noteholder be given non-priority administrative expense status. Therefore, the applicable prior subsection is § 364(b). As noted above, the Debtor has satisfied this subsection.

securities similar to certificates of indebtedness which were issued under the prior Bankruptcy Act. *See* 124 CONG.REC. H11093 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.13 (1991); Morgan, *supra,* at 878; Mitchell, *Securities Regulation in Bankruptcy Reorganizations,* 54 AM.BANKR.L.J. 101, 111 (1980). The notes the Debtor is requesting the court to authorize are tantamount to certificates of indebtedness; however the purpose of the notes are somewhat different because they will be issued for "fresh capital".

 Fresh capital securities are securities issued by a debtor to raise money for working capital or to fund a plan. 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.15 (1991); Morgan, *supra,* at 881; Mitchell, *supra,* at 118. As a general rule, the issuance of fresh capital securities must meet the registration and prospectus delivery requirements of the 1933 Act unless there is an exemption for the particular issuance. 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.15 (1991); Morgan, *supra,* at 881–82; Mitchell, *supra,* at 118; *cf. S.E.C. v. Granco Prods., Inc.,* 236 F.Supp. 968 (S.D.N.Y.1964) (debtor required to register postconfirmation issuance of fresh capital securities because issuance did not qualify for an exemption under 1933 Act). This court agrees with the commentators that § 364(f) permits an exemption for fresh capital securities. *See* 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.16 (1991); Morgan, *supra,* at 881. Therefore, if the Debtor's proposed issuance of notes satisfies the two requisite elements of § 364(f), the court may determine the notes are exempt.

### 2. Application of § 364(f).

#### a. *Definition of "Underwriter".*

The Debtor must demonstrate that it is *not* an underwriter pursuant to § 1145(b). Section 1145(b) states, in pertinent part:

(1) ... an entity is an underwriter under section 2(11) of the [1933 Act], if such entity—

(A) purchases a claim against, interest in, or claim for an administrative expense in the case concerning, the debtor, if such purchase is with a view to distribution of any security received ...;

(B) offers to sell securities offered or sold under the plan for the holders of such securities;

(C) offers to buy securities offered or sold under the plan from the holders of such securities ...

. . . .

(D) is an issuer, as used in such section 2(11) [of the 1933 Act] with respect to such securities.

██ Because the *Debtor* is, (1) not a purchaser of the notes with a view to distribution, (2) not offering to sell the notes for the noteholders under a plan, or (3) not offering to buy the notes from the noteholders under a plan, the *Debtor* is not an underwriter pursuant to § 1145(b)(1)(A), (B) & (C). *See* 3 NORTON BANKRUPTCY LAW & PRACTICE §§ 57.07–57.09 (1991).

██ However the Debtor may be an "underwriter" if it is an "issuer" under § 1145(b)(1)(D). Section 2(11) of the 1933 Act, which is incorporated by reference in § 1145(b) of the Bankruptcy Code, defines "underwriter" and states, in pertinent part:

As used in this paragraph the term "issuer" shall include in addition to an issuer, *any person directly or indirectly controlling or controlled by the issuer,* or any person under direct or indirect common control with the issuer.

15 U.S.C. § 77b(11) (emphasis added). Section 2(11) of the 1933 Act enlarges the definition of underwriter to include the definition of "issuer" and persons who sell securities on behalf of controlling shareholders or persons. *See* 5 COLLIER ON BANKRUPTCY ¶ 1145.02, at 1145–33 (15th ed. 1991). The definition of "issuer" under the 1933 Act is very broad[12] and, by its

---

**12.** The 1933 Act defines issuer as "every person who issues or proposes to issue any securi- ty...." 15 U.S.C. § 77b(4).

literal terms, might encompass a debtor issuing notes under a plan of reorganization. If this court applies a literal application of the term "issuer" as defined in the 1933 Act, the Debtor may be an "underwriter" pursuant to § 1145(b)(1)(D).

Courts and commentators have refused to interpret § 1145(b)(1)(D) as the literal reading of the statute would seem to suggest.

> Considering section 1145(b)(1)(D) in terms of its legislative history, it is submitted that the reference to "issuer," as used in section 2(11) of the [1933] Act, *was intended to pick up only the latter portion of the definition [involving control persons]....*
>
> ....
>
> Thus, section 1145(b)(1)(D) brings "controlling persons" within the ambit of section 1145(b)(1) "underwriter" status but does not affect the "issuer" exemption contained in section 1145(a). A contrary construction could be interpreted as rendering sections 1145(a) and 364(f) meaningless.

5 COLLIER ON BANKRUPTCY ¶ 1145.02, at 1145–33 to 1145–34 (15th ed. 1991) (emphasis added). *See In re Stanley Hotel, Inc.*, 13 B.R. 926, 932–33 (Bankr.D.Colo. 1981) (adopting COLLIER'S interpretation); *In re Amarex, Inc.*, 53 B.R. 12, 13 (Bankr. W.D.Okla.1985) (the "[*Stanley Hotel*] decision is well reasoned and there appears to be no reason to deviate from it"); 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.10 (citing *Stanley Hotel*); *cf., In re Frontier Airlines, Inc.*, 93 B.R. 1014, 1018–20 (Bankr.D.Colo.1988) (after reviewing the legislative histories of § 1145(b)(1) and § 264 of the prior Bankruptcy Act, the court determined that debtor's § 1145 securities law exemption was not precluded notwithstanding the broad definition of "issuer" under the 1933 Act).

This court recognizes that its first focus must be on the statutory language in § 1145(b)(1)(D). If the statutory language is unambiguous, its plain meaning must be enforced. *See United States v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989); *Cami-*

*netti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). However, there are limits to literalism in interpreting statutory language.

The literal interpretation of the words of an act should not prevail if it creates a result contrary to the apparent intention of the legislature and if the words are sufficiently flexible to allow a construction which will effectuate the legislative intention. The intention prevails over the letter, and the letter must if possible be read to conform to the spirit of the act. "While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words."

2A N. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 46.07 (5th ed. 1992) (citing *Pierce v. Van Dusen*, 78 F. 693, 696 (6th Cir.1897)). *See, e.g., Philko Aviation, Inc. v. Shacket*, 462 U.S. 406, 409–12, 103 S.Ct. 2476, 2478–79, 76 L.Ed.2d 678 (1983) (rejecting literal application of § 503(c) of the Federal Aviation Act because it conflicts with Congress' intent); *United States v. Campos–Serrano*, 404 U.S. 293, 298–99, 92 S.Ct. 471, 474–75, 30 L.Ed.2d 457 (1971) (rejecting literal application of 18 U.S.C. § 1546 because it conflicts with Congress' intent); *Lawson v. Suwanee Fruit & Steamship Co.*, 336 U.S. 198, 201–02, 69 S.Ct. 503, 504–05, 93 L.Ed. 611 (1949) (rejecting literal application of § 8(f)(1) of the Longshoremen's and Harbor Workers' Compensation Act because it conflicts with Congress' intent); *In re Santana*, 110 B.R. 819, 820–21 (Bankr. W.D.Mich.1990) (rejecting literal application of § 109(g)(2) of the Bankruptcy Code because it conflicts with Congress' intent).

█ This court agrees with those cases which hold that § 1145(b)(1)(D) is intended to include as its definition of "issuer" only the "control persons" language of § 2(11) of the 1933 Act. *See Frontier Airlines, supra; Amarex, supra; Stanley Hotel, supra.* Section 1145(b)(1)(D) therefore does not totally encompass the broad definition of "issuer" under § 2(4) of the 1933 Act. If § 1145(b)(1)(D) was so construed,

*no debtor in possession or trustee would ever be able to issue exempt securities as envisioned by the Bankruptcy Code.* Section 1145 would be meaningless; likewise, § 364(f), which incorporates § 1145, would be hollow and of no legal importance. Such a result cannot be Congress' intent.

The court concludes the Debtor is not an "issuer" pursuant to § 1145(b)(1)(A)–(D). Therefore, the Debtor is not an underwriter pursuant to § 1145(b).

b. *Definition of "Equity Security".*

■ The second element of § 364(f) is satisfied if the Debtor can demonstrate that the notes are nonequity securities. Examples of nonequity securities include bonds, debentures, promissory notes, and certificates of indebtedness. 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.12 (1991). These types of instruments are debt securities which document a loan of funds to a debtor. *Id.*

■ Section 101(16) of the Bankruptcy Code defines an "equity security" as a:
(A) share in a corporation, whether or not transferable or denominated "stock", or similar security;
(B) interest of a limited partner in a limited partnership; or
(C) warrant or right, *other than a right to convert*, to purchase, sell, or subscribe to a share, security, or interest of a kind subparagraph (A) or (B) of this paragraph[.]

11 U.S.C. § 101(16) (emphasis added). A note is a security.[13] Even though a note may be later converted to stock, such right to convert itself does not transform the note into an "equity security". In effect, § 101(16) states just because a "security" contains "a right to convert" does not

make it into an "equity security". This construction is supported by the legislative history of § 101(16) which states that "[t]he term does not include a security, such as a convertible debenture, that is convertible into equity security, but has not been converted." S.REP. No. 989, 95th Cong., 2d Sess. 24 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5810.[14]

■ The notes to be issued may be subsequently exchanged for stock in the reorganized Debtor if the proposed plan is confirmed. On the other hand, if the plan is not confirmed, (1) the 8% and 13% noteholders will remain entitled to administrative priority distribution, or (2) to the extent that the proceeds from the 13% notes are not released from the escrow account pursuant to court order, those noteholders will be repaid with interest. The 8% and 13% notes, although convertible to stock if the plan is confirmed, are not included within the parameter of the definition of an "equity security" under the Bankruptcy Code. The court determines the 8% and 13% notes that the Debtor now proposes to issue are therefore "nonequity securities" as required by § 364(f).

■ Summarizing, because the Debtor is not an underwriter, as defined by § 1145(b), and the 8% and 13% notes are not equity securities, as defined by § 101(16), the Debtor may issue both types of notes pursuant to § 364(f). Both the 8% and 13% notes are exempt from § 5 of the 1933 Act, the 1939 Act, and any state or local law requiring registration of securities.[15]

3. Other Securities Law Considerations.
a. *Adequate Disclosure.*

■ A fundamental premise of the 1933 Act is that potential investors are entitled

---

**13.** Under the Bankruptcy Code, a " 'security' includes—(i) *note;* (ii) stock; (iii) treasury stock; (iv) bond; (v) debenture; ..." 11 U.S.C. § 101(49) (emphasis added).

**14.** The court is cognizant that there exists apparently conflicting legislative history in § 1145 of the Bankruptcy Code. "[Section 1145(a)(1) ] exempts the offer or sale under section 364 of any security that is not an equity security or convertible into an equity security." S.REP. No. 989, 95th Cong., 2d Sess. 130 (1978), *reprinted in*

1978 U.S.C.C.A.N. 5787, 5916. The court concludes the statutory definition in § 101(16) and its legislative history is more compelling than the apparently conflicting legislative history of § 1145.

**15.** Additionally, because the issuance has been approved by the court and involves a debtor in possession under Title 11, the notes are also exempt pursuant to § 3(a)(7) of the 1933 Act. *See* 15 U.S.C. § 77c.

to adequate information to facilitate informed investment decisions. Morgan, *supra*, at 903 (citing Cohen, *"Truth in Securities" Revisited*, 79 HARV.L.REV. 1340 (1966)). Section 5 of the 1933 Act effectuates the adequate disclosure principle by requiring registration of securities and prospectus delivery. *See* 15 U.S.C. § 77e. Compliance with the 1933 Act for registration and prospectus delivery requirements is extremely burdensome and costly. *See* Mitchell, *supra*, at 103. The cost of complying with § 5 of the 1933 Act may be a deterrent to chapter 11 debtors issuing securities without an exemption.[16]

Adequate information is also a fundamental requirement of a chapter 11 plan of reorganization. *See* 11 U.S.C. § 1125. Under the Bankruptcy Code, the disclosure statement approval process replaces the registration and prospectus requirements of securities laws; a debtor may issue certain securities under bankruptcy court supervision. *See* H.R.REP. No. 595, 95th Cong., 1st Sess. 408–10 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364–66; Morgan, *supra*, at 703–04. *See also Stanley Hotel*, 13 B.R. at 931 (§ 1125 allows the bankruptcy court to determine the adequacy of disclosure without following the strict registration and disclosure requirements of the 1933 Act). The SEC has the right and opportunity to appear and be heard on the issue of whether the disclosure statement provides adequate information. *See* 11 U.S.C. § 1125(d); H.R.REP. No. 595, 95th Cong., 1st Sess. 408–10 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6364–66. The SEC may appear on any other issue in a chapter 11 proceeding. 11 U.S.C. § 1109.

On January 10, 1992, this court approved the Debtor's First Amended Disclosure Statement. The disclosure statement contained adequate information regarding the Debtor, the 8% and 13% notes, the Debtor's proposed reorganization plan, securities laws considerations, and other important information. As was the case with the hearing regarding the Amended Motion, the SEC was given proper notice of the disclosure statement hearing and did not appear. As an exhibit to the Amended Motion, the Debtor submitted a Private Placement Memorandum which will be distributed to potential investors. (*See* Debtor's Exhibit 5). The Private Placement Memorandum contains selected portions of the approved disclosure statement and also gives very detailed information regarding the Debtor's past business, future business plan, the 8% and 13% notes, risk factors, ability to resell, and other important facts. The court has reviewed the contents of the Private Placement Memorandum and finds that it contains adequate information within the meaning of § 1125(a)(1) of the Bankruptcy Code.

### b. *Anti-fraud.*

■ Although the notes are exempt from registration and prospectus delivery requirements, § 364(f) does *not* exempt issuances from the anti-fraud and sanctions provisions of §§ 17(a) and 12(2) of the 1933 Act or Rule 10b–5 of the Securities Exchange Act. *See* 3 NORTON BANKRUPTCY LAW & PRACTICE § 57.13 (1991); Mitchell, *supra*, at 111; Morgan, *supra*, at 863. Therefore, the Debtor is, and shall remain, subject to §§ 17(a) and 12(2) of the 1933 Act and Rule 10b–5 regarding the issuance of the 8% and 13% notes.[17]

### c. *Resale of Notes.*

■ Will the administrative claimant noteholders be legally authorized to resell their notes? Under securities laws, there are two types of exemptions. A *securities exemption* exempts a security from registration and prospectus delivery requirements at the time of issuance *and* when resold by holders and subsequent holders.

---

**16.** In enacting chapter 11 of the Code, Congress realized the extreme burden a debtor incurs by complying with the registration and prospectus requirements. "The cost of developing a prospectus or proxy statement for a large company often runs well over $1 million. That cost would be nearly prohibitive in a bankruptcy reorganization." H.R.REP. No. 595, 95th Cong., 2d Sess. 228 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6187.

**17.** The Debtor has not requested the court to shield it from any liability for fraud.

Morgan, *supra*, at 863. A *transaction exemption* exempts a security from registration and prospectus delivery requirements *only* at the initial issuance stage. *Id.* Subsequent holders desiring to resell the security must either find a new exemption under the securities laws or comply with the registration and prospectus delivery requirements.

Certificates of indebtedness under the Bankruptcy Act were considered transaction exemptions. *See* Morgan, *supra*, at 879; Sequential Info. Sys., Inc., SEC No–Action Letter, [1972–73 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 79,139 (Dec. 4, 1972); Seaferro, Inc., SEC No–Action Letter, [1970–71 Transfer Binder] Fed.Sec. L.Rep. (CCH) ¶ 78,097 (April 22, 1971). The legislative history of § 364(f) states that it does not change then existing law. 124 CONG.REC. H11,093 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards). The practice under the Bankruptcy Act and the legislative history of § 364(f) indicate that issuances under § 364(f) are intended to be a transaction exemption or a "one-shot" exemption. *See* Morgan, *supra*, at 879; Mitchell, *supra*, at 137.

This court concludes that § 364(f) was intended by Congress as a transaction exemption only. Noteholders are not legally entitled to freely resell their notes.[18] Any noteholder who desires to resell the 8% or 13% notes must either comply with the registration and prospectus delivery requirements or locate another exemption.[19]

## C. *Subsequent Issuance of Securities Under § 1145.*

 The Debtor requests a declaratory order that it may, under a confirmed plan of reorganization, issue shares of its reorganized corporate stock in exchange for the administrative claims of the noteholders as an exempt transaction. The Debt-

or's request is based in § 1145(a)(1) which states, in pertinent part:

(a) Except with respect to an entity that is an underwriter as defined in subsection (b) of this section, section 5 of the Securities Act of 1933 (15 USC 77e) and any State or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security does not apply to—

(1) the offer or sale under a plan of a security of the debtor ...

(A) in exchange for a claim against, an interest in, or a claim for an administrative expense in the case concerning, the debtor ...; or

(B) principally in such exchange and partly for cash or property[.]

Section 1145(a)(1) provides an exemption from the registration and prospectus delivery requirements for securities issued to creditors in exchange for claims in connection with a plan. *See Frontier Airlines*, 93 B.R. at 1018; 5 COLLIER ON BANKRUPTCY ¶ 1145.01[2][e], at 1145–15 (15th ed. 1991).

Plan confirmation is not now before this court. The Debtor is requesting an advisory opinion that any proposed swap of securities for administrative noteholder claims will satisfy § 1145(a)(1). Consideration of this issue is premature. Although the Debtor has filed a plan of reorganization and its disclosure statement has been approved, all issues regarding possible plan confirmation will be considered later. This court will determine, if necessary, the Debtor's proposed exchange of stock for the administrative note claims at the time of confirmation of the proposed plan. *Cf. Murray Indus., Inc. v. Federal Ins. Co.* (*In re Murray Indus., Inc.*), 122 B.R. 135, 137 (Bankr.M.D.Fla.1990) (refusing to give advisory opinion regarding possible con-

---

**18.** The Private Placement Memorandum states on the cover: **"PURCHASERS WILL BE UNABLE TO RESELL THE 8% AND 13% NOTES ABSENT REGISTRATION OF THE NOTES UNDER THE [1933] ACT AND APPLICABLE STATE LAW OR ABSENT AN EXEMPTION THEREFROM."** This same language appears in several portions of the Private Placement Memorandum. (*See* Debtor's Exhibit 5). The

court finds that the Private Placement Memorandum adequately informs potential investors of the restrictions on resale of the notes.

**19.** For a discussion on possible exemptions for resale of the notes, see Mitchell, *supra*, at 135–46; Morgan, *supra*, at 881–902.

tract rights under an insurance policy); *JRT, Inc. v. TCBY Sys., Inc.* (*Matter of JRT, Inc.*), 121 B.R. 314, 323 (Bankr. W.D.Mich.1990) (refusing to give advisory opinion regarding enforceability of covenant not to compete clause).

## V. CONCLUSION

Based on the discussion above, this court holds:

1. The Debtor is authorized to incur debt by the sale of 8% notes in an amount not to exceed $650,000 pursuant to 11 U.S.C. § 364. The purchasers of the 8% notes are entitled to an administrative priority pursuant to 11 U.S.C. § 503(b)(1)(A). The Debtor is authorized to forthwith use the 8% note proceeds to (a) complete Sand Lake Project Phases I & II, (b) pay reasonable and necessary general operating expenses, and (c) pay chapter 11 administrative expenses.

2. The Debtor is authorized to incur debt by the sale of 13% notes in an amount not to exceed $6,500,000 (which amount shall include the proceeds from the sale of the 8% notes). The purchasers of the 13% notes are entitled to an administrative priority pursuant to 11 U.S.C. § 503(b)(1)(A). The proceeds from the sale of the 13% notes will be escrowed in an interest bearing bank account until a minimum of $1,284,000 is received from the sale of the 8% and 13% notes *and* (a) the Debtor's plan of reorganization is confirmed or (b) this court, after notice to all creditors and interested parties including the noteholders, allows the escrowed funds to be released pursuant to an order. If the Debtor's plan is not confirmed within one year of this date and no preconfirmation court order is entered which authorizes the Debtor to use the funds in the escrow account, then the funds received from purchasers of the 13% notes shall be returned to each noteholder with pro-rata interest.

3. Pursuant to 11 U.S.C. § 364(f) of the Bankruptcy Code and § 3(a)(7) of the 1933 Act, the issuance of the 8% notes and the 13% notes is exempt from the registration and prospectus delivery requirements of § 5 of the 1933 Act, the 1939 Act, and any state or local law requiring registration of securities.

4. A determination of whether the Debtor may, under a confirmed plan, issue securities exempt from the registration and prospectus delivery requirements of § 5 of the 1933 Act and any state or local law requiring registration of securities in exchange for administrative claims is premature. The court will decide the issue if it is properly brought before it at a plan confirmation hearing.

An order has been entered accordingly.